IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01580-PAB

ORA CHAPMAN, on behalf of A.C.,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,

    Defendant.

---

**ORDER AFFIRMING COMMISSIONER**

---

This matter comes before the Court on plaintiff Ora Chapman's Complaint [Docket No. 3], which seeks review of defendant Michael J. Astrue's (the "Commissioner") final decision that plaintiff's son, A.C., is not disabled and, therefore, not entitled to supplemental security income benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381-1383c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and her minor child, A.C., filed an application for Supplemental Security Income benefits under Title XVI of Act on May 24, 2006, alleging that A.C. has been under a disability since August 1, 2003 due to Attention Deficit Hyperactivity Disorder ("ADHD") and an emotional disorder, among other things. R. 14, 182. A.C.'s claim was initially denied on July 24, 2006, and plaintiff timely requested a hearing before an administrative law judge ("ALJ"). A hearing was held on December 13, 2007. At that

hearing, the ALJ established that the onset date of disability for purposes of A.C.'s claim was March 22, 2005, the day after the Commissioner issued a final decision on prior disability applications submitted by plaintiff and A.C.  R. 488.  On January 23, 2008, the ALJ issued a decision denying plaintiff's claim.  R. 11-25.  Plaintiff requested that the Appeals Council review the ALJ's decision and submitted additional evidence for the Appeals Council's consideration, consisting of certain school records relating to A.C. from the time period between August 2007 and March 14, 2008.  R. 9.  On May 27, 2008, the Appeals Council adopted the ALJ's decision, making it the Commissioner's final decision.  R. 6-9.

At the time of the administrative hearing in this case, A.C. was 11 years old and in the sixth grade.  Plaintiff claims that A.C. is disabled due to his diagnoses of ADHD and oppositional defiant disorder, among other things.[1]  A.C.'s ADHD and oppositional defiant disorder, plaintiff alleges, have resulted in a pattern of problematic behavior at school characterized by disruptive outbursts, preventing A.C. from maintaining normal relationships with his peers or keeping pace with his studies.

Plaintiff testified at the hearing before the ALJ that A.C. had attended five different schools by the time he was 11 years old due to his behavioral problems.  R. 300.  At least one of these school transitions, however, appears to be the result of A.C.'s progress from elementary to middle school, rather than a direct result of behavioral or disciplinary issues.  Upon making the transition to sixth grade, A.C. was enrolled in regular classes at least eighty-percent of his school time, with the remainder

---

[1] A.C. also has a heart condition that requires use of a pacemaker.  However, the heart condition causes him no measurable physical difficulties in the activities of daily living.

of his time spent in special education classes.  R. 300.  Additional school records submitted by plaintiff after the date of the administrative hearing show that A.C's transition to spending more time in regular classes was a difficult one.  R. 446-482.  These records show that A.C. had a string of behavioral problems characterized by defiant or aggressive conduct during the fall of 2007 and early spring of 2008.  One special educator familiar with A.C. indicated that she believed A.C. was introduced into regular education classes too quickly and that he was not making any academic progress because he frequently engaged in disruptive behaviors in the classroom.  R. 446-48.  Moreover, this educator stated that when A.C. was effectively medicated so as to prevent his inappropriate behavior, he was lethargic and had a hard time focusing on classwork.  *Id.*  However, this special educator also stated that A.C. could "behave when he is medicated."  R. 448.  In response to A.C.'s difficulty integrating into the general education classes during the first half of his sixth grade year, A.C. transferred to a different school in the spring of 2008 where he could spend half of his time in special education.  R. 448, 472-74.

A.C.'s difficulty conforming to behavioral norms at school is clearly reflected in two teacher questionnaires completed by his former teachers.  The first teacher questionnaire relevant to this case was completed by plaintiff's third grade teacher, Liz Harkness.  R. 208-215.  The questionnaire is a form allowing the teacher to rate a student in a number of listed activities that are organized under fields corresponding with the six domains that the Commissioner utilizes to evaluate a child's functioning *vis-a-vis* the standards for child disability under the Act.  Ms. Harkness indicated that plaintiff had "serious" or "very serious" problems in the domains of acquiring and using

3

information, attending and completing tasks, interacting and relating with others, and caring for himself.  R. 209-11, 213.  Ms. Harkness completed the questionnaire on August 10, 2006, but its ratings appear to be founded on A.C.'s behavior during his third grade year, or the school year of 2004-2005.  Ms. Cook, plaintiff's sixth grade teacher, also completed a teacher questionnaire.  R. 306-314.  In her questionnaire, dated December 10, 2007, Ms. Cook generally found that plaintiff had "obvious" problems in the domains that she evaluated.  Ms. Cook did, however, indicate that A.C. had "serious" problems in two categories of tasks or behaviors listed under the each of the following three domains: attending and completing tasks, interacting and relating with others, and caring for himself.  R. 308-09, 311.

  A.C.'s medical records show that he has been taking prescribed medications for his ADHD for some time.  A.C. has consistently seen Dr. Mary Stephenson of the Denver Health Medical Center in connection with these prescription medications.  Dr. Stephenson's treatment notes generally show that medication has allowed A.C. to manage his behavioral issues with increasing success.  For example, Dr. Stephenson's notes from a January 20, 2005 appointment state that "overall, the patient is doing well in all settings."  R. 359.  Dr. Stephenson's notes from March 2, 2006 state that plaintiff reported that A.C. had been struggling a great deal at school, including bouts of hyperactivity and stealing from other kids, but that, after taking Strattera, he experienced a "100% improvement with that medication."  R. 349.  The most recent treatment notes of Dr. Stephenson included in the record, dated November 1, 2007, similarly note an improvement in A.C.'s behavior at school.  R. 396.  In these notes, Dr. Stephenson indicated that plaintiff and A.C. "both report patient is doing better overall."

Dr. Stephenson continued, "[r]eports from school have positive comments on them about the patient's behavior." *Id.* These notes also state that plaintiff was receiving fewer calls from school about A.C. and that plaintiff believed A.C.'s symptoms were improved in connection with a higher dose of his medication. *Id.*

In this appeal, plaintiff raises three grounds in support of her claim that the Commissioner's decision was not supported by substantial evidence or applied an incorrect legal standard: (1) the additional records from Denver Public Schools that plaintiff submitted after the ALJ's decision are inconsistent with that decision, (2) the ALJ improperly applied the legal standards relating to weighing medical evidence; and (3) the ALJ improperly ignored evidence in the record from non-medical sources or gave such evidence less weight than was appropriate. For the reasons that follow, I conclude that the Commissioner's decision was supported by substantial evidence and free from reversible legal error.

## II.  ANALYSIS

### A.  Standard of Review

This Court reviews the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir.2003). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  In reviewing the Commissioner's decision, the Court cannot "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  "Under the Social Security Act, the claimant has the burden of proving a disability."  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).  On the other hand, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn of the claimant's own version of those facts."  *Id.* (internal quotation marks omitted).

### B.  Evaluation of ALJ's Decision

A child under the age of eighteen is disabled within the meaning of the Act if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has established a three-step sequential evaluation process to determine whether a child claimant is disabled.  20 C.F.R. § 416.924(a); *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001).  Under this test, a child is disabled if (1) the child is not engaged in substantial gainful activity, (2) the child has an impairment or combination of impairments that is severe, and (3) the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404.  20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237.  "In making the third determination – whether a

child's impairment meets or equals a listed impairment – the ALJ must consider whether the impairment, alone or in combination with another impairment, medically equals, or functionally equals the listings." Briggs, 248 F.3d at 1237 (quotations omitted).

A child's impairment or combination of impairments functionally equals the listings and, thus, constitutes a disability under the Act, when it results in "marked" limitations in two domains or an "extreme" limitation in one domain, as described in 20 C.F.R. § 416.926a. Under § 416.926a(b), the Commissioner assesses how a child functions in his activities "in terms of six domains: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Briggs*, 248 F.3d at 1237 (quoting 20 C.F.R. § 416.926a(b)(1)(i)-(vi)).

At the first step of the child disability evaluation, the ALJ found that A.C. has not engaged in substantial gainful activity at any time. R. 18. At step two, the ALJ concluded that A.C. has the severe impairments of ADHD and oppositional defiant disorder. *Id.* However, at step three, the ALJ found that these severe impairments did not medically or functionally limit A.C. such that they meet or equal the listing criteria of Appendix 1, Subpart P of 20 C.F.R. Pt. 404. R. 18-20. Because plaintiff does not challenge the ALJ's conclusions with respect to A.C.'s working status, severe impairments, or whether his severe impairments medically meet the listings, the central issues in this appeal involve the ALJ's functional equivalency determination. With respect to the six domains listed in 20 C.F.R. § 416.926a(b)(1), the ALJ determined that A.C. had less than marked limitations in the domains of attending and completing tasks;

7

interacting and relating with others; and caring for oneself, and no limitations in the other three domains.  I turn now to plaintiff's specific contentions of error.

### 1. Additional School Records

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because evidence submitted by plaintiff to the Appeals Council after the date of the ALJ's decision supports a finding of disability.  The new evidence in question includes documentation from Denver Public Schools relating to A.C.'s placement at a new school approximately two-thirds of the way through his sixth grade school year.  As part of this transition, A.C. shifted from being in general education class approximately eighty percent of his time in school to splitting his time half and half between general and special education classes.  R. 448.

These new school records do not undermine the ALJ's decision.  Notably, the records do not include any evidence that A.C.'s impairments were more severe during the 2007-2008 school year than during any previous time period.  The ALJ considered the same types of behavioral problems that are reflected in these new records when determining A.C.'s disability in the first instance and found that, in light of medical evidence in the record and A.C.'s medication regimen, such problems did not indicate that A.C. had "marked" or "extreme" limitations in any domain.  Further, the fact that A.C. transferred to a setting involving more special education does not in itself evidence disability.  *See* 20 C.F.R. § 416.924a(b)(7)(iv) ("The fact that you do or do not receive special education services does not, in itself, establish your actual limitations or abilities.").  Here, the record reflects that it was at plaintiff's behest that A.C. was mainstreamed into more general education classes in sixth grade.  R. 473.  While that

transition did not work out as well as hoped, the fact that A.C. still functions better in a special education context does not detract from the ALJ's findings that his limitations are, at most, less than marked in each of the six domains.

### 2. Weighing of Medical Opinion Evidence

Plaintiff faults the ALJ's determination on the grounds that he gave great weight to the evaluations of non-examining Disability Determination Services ("DDS") physicians. Each DDS evaluation cited by the ALJ found that A.C. has no "marked" or "extreme" limitations in any domain. The ALJ accepted "as the best assessment of [A.C.'s] function" the most recent DDS evaluation, which was signed by State agency physicians on July 18 and 21, 2006. R. 19. The DDS evaluations are a standard form allowing a reviewer to check boxes corresponding to the claimant's limitations under each of the six domains, and to provide comments. On the DDS evaluation accepted by the ALJ, in the domains of attending and completing tasks and interacting and relating with others, the reviewers noted that A.C. "doesn't listen" and that he "gets in trouble frequently," but that his behavior is "much better on med[ications]." R. 317. They found that A.C. has less than marked limitations in these domains. *Id.* As to A.C.'s ability to acquire and use information, the DDS physicians cited A.C.'s average to low-average scores in Wechsler Intelligence Scale for Children testing in support of a finding of "no limitation." *Id.*

Plaintiff contends that the DDS evaluations should have been given less weight than other medical records from treating or examining medical sources. However, the medical evidence submitted by plaintiff from treating and examining sources is consistent with the DDS evaluations. Dr. Don Raden examined A.C. on March 8, 2005.

Dr. Raden found that A.C. had moderate limitations in his daily activities, abilities, and asocial activities.  R. 150.  While Dr. Raden found A.C.'s concentration and cognitive abilities to be "moderately intact," he opined that A.C.'s "ability to understand, remember and carry through with simple one- or two-step instructions is poor."  *Id.*  However, this latter finding was based on Dr. Raden's mental status exam of A.C. which, as the ALJ noted in his decision, reflects obviously wrong answers to simple questions that call into question the reliability of Dr. Raden's results.  Moreover, Dr. Raden's finding of moderate limitations would not support a finding that A.C. had marked limitations in any domain.  *See* 20 C.F.R. § 416.926a(e)(2)(i) ("'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'").  In addition, the treatment notes from A.C.'s treating physician, Dr. Stephenson, also show that A.C.'s ADHD symptoms were controlled to a manageable degree by medication.  R. 349, 359, 396.  The ALJ specifically noted Dr. Stephenson's prognosis of improvement and cited numerous instances in the medical evidence that reflect such improvement in A.C.'s symptoms in response to medication.  R. 19.

Because there is no medical evidence in the record that conflicts with the DDS evaluations and the ALJ specifically addressed and discussed the key medical evidence in his decision, I cannot say that the ALJ erred by accepting the most recent DDS evaluation as a true reflection of A.C.'s limitations.  The regulations make clear that "State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."  20 C.F.R. § 416.927(f)(2)(i).  The opinions of these sources must therefore be considered by an ALJ.  *Id.*  Under the

circumstances of this case, the ALJ appropriately considered and relied on the medical opinions of the State agency physicians.

### *3. Consideration of Other Source Evidence*

Plaintiff argues that the ALJ erred by failing to consider or discuss certain school records that support a finding of disability. In particular, plaintiff identifies the teacher questionnaire completed by A.C.'s third grade teacher, Ms. Harkness, as a key piece of evidence from a non-medical source that received no attention in the ALJ's decision. Plaintiff is correct that the ALJ's written decision omits any discussion of Ms. Harkness' teacher questionnaire. On the other hand, the decision explicitly references the teacher questionnaire completed by A.C.'s sixth grade teacher, Ms. Cook. With respect to that questionnaire, the ALJ stated that it was not inconsistent with the medical assessments that the ALJ gave the greatest weight. R. 20. The ALJ added that Ms. Cook's questionnaire confirmed that A.C. has behavioral problems, but that it did not disturb his conclusion that such problems are "less than marked" in their severity.

In *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996), the Tenth Circuit held that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." The Tenth Circuit tempered this statement, however, stating that while "[t]he record must demonstrate that the ALJ considered all of the evidence, . . . an ALJ is not required to discuss every piece of evidence." *Id.* at 1009-10. It is noteworthy that the *Clifton* court made these statements in the context of an ALJ decision that the Tenth Circuit called a "bare conclusion" because it "merely stated a summary conclusion that [the claimant's] impairments did not meet or equal

11

any Listed Impairment." *Id.* at 1009.

Under 20 C.F.R. § 416.913(d), teacher questionnaires and like evidence from school sources constitute information from "other sources" (as opposed to evidence from "acceptable medical sources").  Because the regulations do not explicitly discuss how an ALJ should weigh "other source" evidence, the Social Security Administration published an administrative ruling clarifying the topic.  According to Social Security Ruling 06-03p, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006) (hereinafter "SSR 06-03p"), information from "'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  Of note, SSR 06-03p states that non-medical sources, such as teachers and school counselors are valuable sources of evidence for assessing an individual's functioning because these sources often "have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time."  *Id.* at *3.  That ruling explains the nature of the analysis an ALJ generally should undertake when presented with relevant evidence from school sources:

> For opinions from sources such as teachers, counselors, and social workers who are not medical sources, and other non-medical professionals, it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion.

SSR 06-03p at *5.  Regarding how this consideration should be exhibited in an ALJ's written decision, SSR 06-03p states that there is a distinction between what an ALJ

12

must consider and he must explain in the decision, but, in general, the ALJ should explain the weight given to opinions from "other sources" or include a discussion of the evidence that allows a reviewing court to follow the ALJ's reasoning, at least where the evidence may have an effect on the outcome of the case. *Id.* at *6. Citing both *Clifton* and SSR 06-03p, the Tenth Circuit has held that it is error for an ALJ to fail to discuss the weight given to the opinion of a clinical nurse specialist, i.e., "other source" evidence, and to highlight only evidence from that opinion favorable to a finding of nondisability while failing to account for the parts of the opinion supporting a claim of disability. *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007).

After reviewing the record, I conclude that it was error for the ALJ to omit any discussion of Ms. Harkness' teacher questionnaire. As stated previously, Ms. Harkness indicated in her teacher questionnaire that A.C. had "serious" or "very serious" problems in four domains. Under the domain of interacting and relating with others, Ms. Harkness rated A.C. as having "very serious" problems that occurred on an hourly basis in the activities of playing cooperatively with other children, making and keeping friends, seeking attention appropriately, following rules, and relating experiences and telling stories. R. 211. She indicated that A.C. had "serious" problems under the domain of attending and completing tasks with respect to paying attention when spoken to directly, focusing long enough to finish assigned activity or task, organizing own things or school materials, completing work accurately without careless mistakes, and working without distracting self or others. R. 210. These ratings are consistent with plaintiff's testimony that A.C. has a difficult time making friends and has fallen behind his grade level due to his frequent inappropriate behavior. And Ms. Harkness' evaluation is one from a

person who observed A.C. in her professional capacity throughout the course of a school year. Because Ms. Harkness' teacher evaluation is, in part, supportive of a finding of disability, the ALJ should have discussed how he weighed this evidence in light of other record evidence, whether he rejected the conclusions therein, and on what grounds. This is the type of evidence that, under SSR 06-03p, should be discussed with sufficient detail to allow this Court to understand the ALJ's reasoning.

While an ALJ must include sufficient discussion of evidence probative of a finding of disability in his opinion so as to allow meaningful review, the Tenth Circuit has "rejected 'a construction of *Clifton* that, based on a reading of the ALJ's decision as a whole, would lead to unwarranted remands needlessly prolonging administrative proceedings.'" *Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009) (quoting *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005)). Thus, the Tenth Circuit has applied the doctrine of harmless error in social security appeals. In *Fischer-Ross v. Barnhart*, 431 F.3d at 733-34, the Court of Appeals explained that "harmless error analysis . . . may be appropriate to supply a missing dispositive finding . . . where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder following the correct analysis, could have resolved the factual matter in any other way."

The question, then, is whether the ALJ's failure to include a discussion of Ms. Harkness' teacher questionnaire in his decision was harmless error. For two reasons, I conclude that another administrative factfinder would not have reached a different outcome following the correct analysis. First, Ms. Cook's teacher questionnaire, completed more than a year later than Ms. Harkness' questionnaire, reflects significant

improvement in A.C.'s school functioning.  Based on her experience with A.C. during his sixth grade year, Ms. Cook found that he had "obvious" problems in a number of activities, but found "serious" problems in only a handful of A.C.'s activities.  R. 307-311.  Under 20 C.F.R. § 416.926a(e)(2)(i), a "marked limitation" is one that is "more than moderate but less than extreme" and "interferes seriously" with the child's "ability to independently initiate, sustain, or complete activities."  Reviewing Ms. Cook's teacher questionnaire, I conclude that the ALJ's conclusion that it reflects only moderate, or less than "marked," limitations in A.C.'s functioning at school is supported by substantial evidence.  Thus, even if Ms. Harkness' earlier questionnaire relating to A.C.'s third grade year could be read to support a finding of marked limitations in two or more domains, Ms. Cook's more recent questionnaire undercuts a finding that such limitations continued with the same severity or met the durational requirement for disability under the Act.

      Second, the ALJ identified significant medical and other evidence in the record that is inconsistent with the restrictive ratings reached by Ms. Harkness.  For example, A.C.'s treating physician, Dr. Stephenson, reported after office visits in 2005, 2006, and 2007 that A.C. was generally doing well in all areas and his medication was allowing him to control his ADHD symptoms.  Dr. Stephenson also obtained reports from school personal that, as of November 2007, reflected that A.C. was garnering positive comments for his behavior.  Additionally, Dr. Raden, who examined A.C. on March 8, 2005, found that A.C. had only moderate limitations in his daily activities, abilities, and asocial activities.  R. 150.  Taking the evidence in the record as a whole, I find that Ms. Harkness' teacher questionnaire would not have caused a reasonable administrative

15

factfinder to conclude that A.C. had an impairment that functionally equals the listings.

To the extent that plaintiff argues that "other source" evidence beyond the teacher questionnaires mandates reversal of the Commissioner's decision, I disagree. Ms. Harkness' questionnaire reflects the school evidence that is most supportive of a finding of disability and it does not warrant a remand to the ALJ for the reasons discussed above.  Other school records in the evidence, including the most recent records submitted by plaintiff to the Appeals Council, while demonstrating that A.C. does indeed experience symptoms of ADHD and oppositional defiant disorder that make his school and social activities more difficult than they would be for an average child of his age, do not show that he has more than moderate limitations in any domain. Thus, I find that the ALJ's conclusions regarding A.C.'s functioning in each domain (which I read in conjunction with the ALJ's general discussion of the record evidence) are supported by substantial evidence.

## III.  CONCLUSION

After careful review of the ALJ's written decision, the evidence submitted to the Commissioner by plaintiff, and plaintiff's argument at the hearing I held in this matter on July 24, 2009, I conclude that the Commissioner's decision was supported by

substantial evidence and free from reversible legal error.  Therefore, it is

**ORDERED** that the decision of the Commissioner is AFFIRMED.

DATED July 31, 2009.

              BY THE COURT:

              s/Philip A. Brimmer
              PHILIP A. BRIMMER
              United States District Judge